IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| RUSTIN I. SMITH, | ) | CIVIL NO. 11-00498 LEK-RLP |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| BLAKE DAVIDSON, ET AL., | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT LOUIS M. KEALOHA's MOTION TO DISMISS PLAINTIFF'S VERIFIED COMPLAINT**

Before the Court is Defendant Louis M. Kealoha's ("Kealoha") Motion to Dismiss Plaintiff's Verified Complaint, filed December 8, 2011.  Plaintiff Rustin I. Smith ("Plaintiff") filed his memorandum in opposition on February 23, 2012, and Kealoha filed his reply on February 20, 2012.  On March 15, 2010, Defendant State of Hawaii ("the State") filed a Statement of No Position with respect to the Motion.  This matter came on for hearing on March 19, 2012.  Appearing on behalf of Kealoha was Curtis Sherwood, Esq., appearing on behalf of the State was Richard Stacey, Esq., and appearing on behalf of Plaintiff were Ronald Kim, Esq., and Eric Seitz, Esq.  After careful consideration of the Motion, supporting and opposing memoranda, and the arguments of counsel, Kealoha's Motion is HEREBY GRANTED IN PART AND DENIED IN PART for the reasons set forth below.

## BACKGROUND

Plaintiff filed his Verified Complaint For Damages, Declaratory and Injunctive Relief ("Complaint") on August 17, 2011 against Defendants Blake Davidson ("Davidson"), William Lu ("Lu"), the City and County of Honolulu ("the City"), the State, and Kealoha (collectively "Defendants"), alleging violations of his federal rights under 42 U.S.C. § 1983 and various state-law claims.[1]

Plaintiff is the President of Hard Knocks, Inc. ("Hard Knocks"), which owns and operates two stores on Oahu.  [Complaint at ¶¶ 4, 11.]  He alleges that, on April 12, 2011, the District Court of the First Circuit, Honolulu Division, filed an Anticipatory Search Warrant based on an affidavit made by Lu, which authorized law enforcement officials to search Plaintiff's residence for bath salts containing methylenedioxypyrovalerone ("MDPV").[2]  That same day, approximately fifty law enforcement officers searched Plaintiff's residence and arrested him, seizing cash and a vehicle from the residence.  Plaintiff was questioned

_____

[1] On February 23, 2012, the parties stipulated to the dismissal without prejudice of Plaintiff's claims against Defendants Davidson and Lu.  [Dkt. no. 52.]

[2] At an unspecified date, MDPV was designated a Schedule I drug under Haw. Rev. Stat. Chapter 329 on a temporary or emergency basis.  Plaintiff alleges that he did not know he possessed any products containing MDPV, and that the Notice of Scheduling and Emergency Controlled Scheduling Action placing MDPV on Schedule I was insufficient to inform him and the public of such change.  [Complaint at ¶¶ 15-17.]

by Honolulu Police Department ("HPD") detectives, and detained overnight without formal charges or the opportunity to appear in court or post bail. [Id. at ¶¶ 18-24.]

On April 13, 2011, the District Court of the First Circuit, Honolulu Division, filed a Search Warrant based on an affidavit made by Davidson, which authorized law enforcement officiants to search Hard Knocks' stores for bath salts containing MDPV and related paraphernalia and documentation. During the raids conducted pursuant to the Search Warrant, HPD arrested two Hard Knocks employees and seized cash from the stores. [Id. at ¶¶ 26-28.]

Plaintiff alleges that HPD continued to hold him overnight on April 13, 2011 without formal charges or the opportunity to appear in court or post bail. On April 14, 2011, HPD read Plaintiff his rights, and released him later that afternoon. Plaintiff has not been charged with any offense. [Id. at ¶¶ 29-31.]

Plaintiff alleges the following causes of action: (1) a 42 U.S.C. § 1983 claim based on unreasonable searches and seizures, cruel and unusual punishment, and the denial of due process; (2) denial of due process based on the vagueness of Haw. Rev. Stat. § 712-1242; (3) a challenge to Haw. Rev. Stat. § 329-11(e) based on the Hawaii Administrative Procedures Act; (4) "Alternative to Count I - Negligent Training/Supervision," a

3

negligent training, supervision, and/or discipline claim against
Kealoha and the City; (5) a negligence claim against Kealoha and
the City; (6) a negligent infliction of emotional distress
("NIED") claim against Kealoha and the City; (7) an intentional
infliction of emotional distress ("IIED") claim against Kealoha
and the City; (8) a conversion claim against Kealoha; and (9) a
false imprisonment claim against Kealoha.  Kealoha, the Chief of
HPD, is sued in his official and individual capacities.  [Id. at
¶ 7.]

I.  **Motion**

        Kealoha moves to dismiss the Complaint against him
because (1) Plaintiff's claims against him in his official
capacity are redundant; and (2) various causes of action fail to
state a claim under the pleading standards established in
Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009).  [Mem. in Supp.
of Motion at 2.]

        A.  **Official Capacity Claims**

        Kealoha argues that the claims made against him in his
official capacity are duplicative of the claims against the City.
That is, a suit against a governmental officer in his official
capacity is the same as a suit against the entity of which the
officer is an agent; here, HPD and the City.  [Id. at 13-14.]

        B.  **Failure to State a Claim**

        Kealoha also argues that the majority of the claims

4

against him do not involve matters that he personally participated in, and that the allegations are conclusory and fail to state a claim.  Of the nine causes of action, all but the second and third name Kealoha.  [Id. at 2.]

### 1.   42 U.S.C. § 1983 Claim

Kealoha argues that Plaintiff's first cause of action is insufficient because it fails to allege any personal participation by Kealoha.  He notes that there are no factual allegations that he directed the search and seizure of Plaintiff and his property, violated the knock and announce rule, prolonged Plaintiff's detention, or otherwise participated in the conduct giving rise to the alleged violations.  To the extent Plaintiff alleges a purported policy and/or practice, Kealoha argues that the allegations are vague and conclusory.  [Id. at 4-5.]

Kealoha also asserts that Plaintiff relies on inapplicable constitutional violations to support his § 1983 claim.  To the extent Plaintiff alleges deprivations of state law rights, Kealoha notes that those claims are not actionable under § 1983.  [Id.]

### 2.   Placing MDPV on Schedule 1

Plaintiff's second cause of action takes issue with the placement of MDPV onto Schedule 1 and the law enabling the Department of Public Safety to do so.  Kealoha argues that Plaintiff's second cause of action does not purport to state a

claim against him, despite Plaintiff's use of the plural term "Defendants." Kealoha maintains that this claim was not meant to apply to him. [Id. at 7.]

### 3.   Negligent Supervision and Training

Kealoha next argues that Plaintiff's fourth cause of action is entirely conclusory and that he cannot be liable as an individual supervisor under a *respondeat superior* theory of liability. He argues that, in order to maintain a state law claim for negligent supervision and training, Plaintiff must establish that the employer knew or should have known of the necessity and opportunity for exercising a greater degree of control or supervision over a particular employee. Nor does Plaintiff allege any factual details regarding how the HPD officers' behavior was related to Kealoha's failure to train in the instant matter. Specifically, he argues that Plaintiff fails to identify how Kealoha failed to train the officers involved, how he was negligent in supervising in the officers involved, or describe how he failed to discipline them with regard to the incident at issue. Last, Kealoha argues that Plaintiff fails to plead nonconclusory facts to "plausibly" support the theory that the subordinate officers were acting outside the scope of their employment. [Id. at 8-9.]

### 4.   Negligence-Based Claims

Kealoha argues that Plaintiff's fourth, fifth, and

sixth causes of action fail to allege malice, which is required
to maintain negligence claims against government officials.  [Id.
at 11-12 (citing <u>Faaita v. Liang</u>, 2009 WL 3124763, at *18 (D.
Hawai'i 2009) ("[I]n order for an action to lie against an
official acting under a claim of privilege, it is essential that
the injured party allege and prove, to the requisite degree, that
the official had been motivated by malice and not by an otherwise
proper purpose.")).]

### 5. Conclusory Claims

With respect to causes of action five, six, seven,
eight, and nine, Kealoha states that he is simply lumped in with
other Defendants, and is made the subject of conclusory
allegations in which he played no direct role.  There are no
allegations that he personally participated in this particular
operation, therefore, the allegations in these claims make no
sense when applied to him.  [Id. at 12-13.]

## II. Plaintiff's Memorandum in Opposition

Plaintiff argues that Kealoha was personally involved
in and committed wrongful conduct that caused the deprivation of
Plaintiff's constitutional rights due to: (1) implementing,
maintaining, and allowing the use and continuance of the
unconstitutional "48-hour rule"; and (2) failing to sufficiently
train and/or supervise HPD members who violated the
knock-and-announce rule when they knocked down the door to

Plaintiff's residence.  He also argues that the allegations plausibly support the reasonable inference that Kealoha acted with malice and that he is liable under causes of action five, six, seven, eight, and nine.  [Mem. in Opp. at 2.]

## A.   Kealoha's Personal Involvement

Plaintiff argues that allegations detailing how Kealoha implemented the 48-hour policy and proving its illegality are unnecessary to state a plausible claim against him.  He asserts that a supervisor may be liable under § 1983 if he or she was personally involved in the constitutional deprivation, or if there is a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation.  Plaintiff states that supervisors may be liable for: "'(1) their own culpable action or inaction in the training, supervision, or control of subordinates; (2) their acquiescence in the constitutional deprivation of which a complaint is made; or (3) for conduct that showed a reckless or callous indifference to the rights of others.'"  [Id. at 3 (quoting Castro v. Melchor, 760 F. Supp. 2d 970, 993 (D. Haw. 2010)).]  Further, personal participation is not essential if the supervisor causes a deprivation of rights by "'setting in motion a series of acts by others' which the supervisor knows or reasonably should know would result in injury."  [Id.]  According to Plaintiff, as HPD Chief, "common sense and the law irrefutably provide that

8

Defendant Kealoha is responsible for implementing department-wide policies which include policies regarding the arrest and detention of individual citizens, and for training and supervising police officers." [Id. at 4 (citing Revised Charter of Honolulu §§ 6-1601 and 6-1604).]

Plaintiff asserts that he alleges two violations of his constitutional rights attributable to Kealoha: unduly prolonging his detention and the violation of the knock-and-announce rule. First he argues that, as Chief, Kealoha is responsible for, and personally and directly involved in, implementing, allowing, maintaining, acquiescing in, and continuing the use of the 48-hour policy which allows for constitutional violations. Plaintiff alleges he was arrested and held without any charge for approximately 46 hours pursuant to the HPD's policy or practice of arresting individual citizens without warrants and holding them without bail for 48 hours pending a determination of whether to charge those individuals.  [Id. at 5 (citing Complaint at ¶¶ 19, 22, 24, 29, 31, 38).]

Second, Plaintiff argues that Kealoha is responsible for training and supervising police officers, and his inaction in failing to train and/or supervise and/or his acquiescence in not disciplining any officers who violated the knock-and-announce rule presents a plausible claim that allows this Court to draw the reasonable inference that Kealoha is liable for this

violation of Plaintiff's rights.  [Id. at 10.]

### B.   **Malice Alleged With Respect to Negligence Claims**

Next, Plaintiff argues that Kealoha is liable for torts that he committed in his individual capacity regardless of whether he acted with malice.  He acknowledges that, to the extent that this Court agrees with Kealoha's argument that the claims against him in his official capacity are redundant, any argument that Plaintiff must demonstrate malice to support negligence-based claims against him in his official capacity is moot.  [Id. at 11.]

Plaintiff contends that malice does not need to be plead formulaically, as a court may find malice "upon reviewing defendants' negligent actions that evidence the intent of a reckless disregard of law or a person's rights."  [Id. at 11-12.] Here, Plaintiff argues that his allegations plausibly support a reasonable inference that Kealoha acted in a reckless and flagrant disregard of the law and Plaintiff's legal rights.[3] Plaintiff alleges his unduly prolonged detention was committed pursuant to HPD's official policy and/or practice, and, taken as

---

[3] Plaintiff asserts that Kealoha is the administrative head of the HPD and is responsible for implementing and enforcing department-wide policies and for training and supervising police officers.  "Kealoha is aware of the illegality of the 48-hour policy, but he continues to implement and maintain the policy and refuses to even discuss the matter with Plaintiff's counsel." [Id. at 12 (citing Declaration of Eric A. Seitz at ¶¶ 12-13, 16-19).]

true, these allegations support an inference that Kealoha

committed the torts alleged in his fourth, fifth, and sixth

causes of action, with malice.  [Id. at 12-13.]

### III. **Kealoha's Reply**

In his reply, Kealoha asserts that Plaintiff's

opposition fails to address many of the issues raised in the

Motion.  He asks the Court to: (1) dismiss all claims against

Kealoha in his official capacity; (2) dismiss all of the § 1983

claims brought under the due process and cruel and unusual

punishment clauses; (3) construe Plaintiff's second cause of

action as inapplicable to Kealoha; and (4) dismiss the negligent

supervision and/or training claim against Kealoha.  [Reply at 2-

3.]

Kealoha argues that the § 1983 claim is not sufficient

under the Ashcroft v. Iqbal standard and does not allege that

Kealoha, through his own individual actions, violated the

Constitution.  [Id. at 4.]  He argues that the conclusion that

the Chief of HPD is responsible for training and supervising

police officers is not supported by facts in the Complaint; the

allegations are conclusory and not entitled to a presumption of

truth.  [Id. at 4-6.]

With respect to Plaintiff's common law claims, Kealoha

contends that Plaintiff seeks to supplement allegations in the

Complaint with statements from his counsel, and has simply

incorporated the vague and conclusory allegations of his federal claims into them.  [Id. at 6.]

## STANDARD

Federal Rule of Civil Procedure 12(b)(6) permits a motion to dismiss a claim for "failure to state a claim upon which relief can be granted[.]"

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)); see also Weber v. Dep't of Veterans Affairs, 521 F.3d 1061, 1065 (9th Cir. 2008).  This tenet – that the court must accept as true all of the allegations contained in the complaint – "is inapplicable to legal conclusions."  Iqbal, 129 S. Ct. at 1949.  Accordingly, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Id. (citing Twombly, 550 U.S. at 555).  Rather, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Id. (citing Twombly, 550 U.S. at 556).  Factual allegations that only permit the court to infer "the mere possibility of misconduct" do not show that the pleader is entitled to relief.  Id. at 1950.

"Dismissal without leave to amend is improper unless it is clear that the complaint could not be saved by any amendment."

Harris v. Amgen, Inc., 573 F.3d 728, 737 (9th Cir. 2009)

(citation and quotation marks omitted).  "But courts have

discretion to deny leave to amend a complaint for futility[.]"

Johnson v. American Airlines, Inc., 834 F.2d 721, 724 (9th Cir.

1987) (citation and quotation marks omitted).

**DISCUSSION**

**I.   Official Capacity Claims**

Plaintiff's claims against the City and Kealoha in his

official capacity are redundant.  It is well-settled that

"[t]here is no longer a need to bring official-capacity actions

against local government officials, . . . local government units

can be sued directly for damages and injunctive or declaratory

relief."  Kentucky v. Graham, 473 U.S. 159, 166-67 n.14 (1985);

see also Monell v. Dep't of Soc. Servs., 436 U.S. 658, 690 n.55

(1978) (stating that "official capacity suits generally represent

only another way of pleading an action against an entity of which

an officer is an agent").  The official-capacity claims against

Kealoha "duplicate[] the claims asserted against the City and

County of Honolulu" and are therefore DISMISSED.  See Wong v.

City & Cnty. of Honolulu, 333 F. Supp. 2d 942, 947 (D. Hawai'i

2004).


The only enumerated cause of action that specifically

names Kealoha in his official capacity is the first cause of

action for violation of § 1983.  The Complaint, however, does
indicate that Kealoha is sued in both his individual and official
capacities.  [Complaint at ¶ 7.]  To the extent Plaintiff sought
to bring all of his claims against Kealoha in his official
capacity, they are DISMISSED WITH PREJUDICE as to Kealoha in
their entirety.  The Motion is GRANTED as to any official
capacity claims against Kealoha.

## II.  First Cause of Action - 42 U.S.C. § 1983

42 U.S.C. § 1983 provides in pertinent part:

> Every person who, under color of any statute,
> ordinance, regulation, custom, or usage . . .
> subjects, or causes to be subjected, any citizen
> of the United States . . . to the deprivation of
> any rights, privileges, or immunities secured by
> the Constitution and laws, shall be liable to the
> party injured in an action at law, suit in equity,
> or other proper proceeding for redress. . . .

Plaintiff alleges that his federal rights under the
Fourth, Eighth and Fourteenth Amendments were violated.  First,
as to the Eighth Amendment's prohibition of cruel and unusual
punishment, such provision does not apply here because none of
the allegations concern post-conviction, governmental conduct.
See, e.g., Whitley v. Albers, 475 U.S. 312, 318 (1986) (stating
that the Eighth Amendment "was designed to protect those
convicted of crimes," and applies "only after the State has
complied with the constitutional guarantees traditionally
associated with criminal prosecutions"); Medeiros v. City & Cnty.
of Honolulu, CV No. 11-00221 DAE-RLP, 2011 WL 3566860, at *7 (D.

14

Hawaiʻi Aug. 12, 2011) ("Indeed, the Eighth Amendment's prohibition against cruel and unusual punishment does not attach until after conviction and sentence.  Because Plaintiff fails to state any facts indicating that a conviction, sentence, or incarceration occurred in the instant action, Plaintiff does not properly plead a constitutional violation under the Eighth Amendment." (citation and quotation marks omitted)).  Here, the Complaint is clear that Plaintiff was never charged or convicted of any offense.  Further, the Fourteenth Amendment does not apply here based on the "more-specific provision" rule; rather, the Fourth Amendment right against unreasonable searches and seizures appears to apply.  See Graham v. Connor, 490 U.S. 386, 395 (1989) (providing that when there is an "explicit textual source" of constitutional protection available, "that Amendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing" such claims).  The Court, therefore, GRANTS the Motion as to Plaintiff's § 1983 claims brought under the Eighth and Fourteenth Amendments as to Kealoha.

     As to Plaintiff's Fourth Amendment claim, under certain circumstances, a failure to train may create liability "only where the failure to train amounts to deliberate indifference to the rights of persons" the police have contact with.  See City of Canton v. Harris, 489 U.S. 378, 388 (1989).  Deliberate indifference may be found where a training program is obviously

deficient, and the inadequacy of the program is likely to result in the violation of citizens' constitutional rights.  Id. at 390. Additionally, "the identified deficiency in a city's training program must be closely related to the ultimate injury."  Id. at 391.

Here, Plaintiff does not sufficiently allege personal involvement by Kealoha with respect to any failure to train that amounts to deliberate indifference to Plaintiff's rights. Plaintiff's allegations consist of little more than bare legal conclusions, which are insufficient to survive a motion to dismiss.  See Hydrick v. Hunter, No. 03-56712, 2012 WL 89157, at *4 (9th Cir. Jan. 12, 2012) ("The absence of specifics is significant because, to establish individual liability under 42 U.S.C. § 1983, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution.  Even under a deliberate indifference theory of individual liability, the Plaintiffs must still allege sufficient facts to plausibly establish the defendant's knowledge of and acquiescence in the unconstitutional conduct of his subordinates." (citation and quotation marks omitted)).

It is arguably possible, however, for Plaintiff to cure the defects in this claim by amendment.  See Flowers v. First

<u>Hawaiian Bank</u>, 295 F.3d 966, 976 (9th Cir. 2002) ("A district court . . . does not abuse its discretion in denying leave to amend where amendment would be futile."). The Motion is GRANTED IN PART AND DENIED IN PART as to Count I, and the claim is DISMISSED WITHOUT PREJUDICE.[4]

### III. <u>Second Cause of Action - Due Process Violation</u>

Kealoha argues that Plaintiff's second cause of action does not purport to state a claim against him, despite Plaintiff's use of the plural term "Defendants." Plaintiff's second cause of action takes issue with the placement of MDPV onto Schedule 1 and the law enabling the Department of Public Safety to do so. Plaintiff does not directly respond to this argument in his opposition. The Motion is GRANTED IN PART AND DENIED IN PART, and the second cause of action is DISMISSED WITH PREJUDICE as to Kealoha.

### IV. <u>Malice - Fourth, Fifth, and Sixth Causes of Action</u>

Plaintiff alleges the following negligence-based claims against Kealoha: (1) negligent training and/or supervision (fourth cause of action); (2) negligence (fifth cause of action); and (3) NIED (sixth cause of action). None of these claims

---

[4] Although the Court indicated at the March 19, 2012 hearing on the Motion that it was inclined to order Plaintiff to file a motion for leave to amend his first cause of action against Kealoha in his individual capacity, the Court instead GRANTS Plaintiff leave to amend this claim without filing a separate motion for leave to amend, in accordance with the terms of this Order.

includes allegations that Kealoha acted with malice, which is required to overcome the "qualified or conditional privilege" recognized by Hawai'i law.  As this district court has recognized:

> Hawaii law provides that a nonjudicial government official has a qualified or conditional privilege with respect to his or her tortious actions taken in the performance of his or her public duty.  Towse v. State of Hawaii, 647 P.2d 696, 702 (Haw. 1982); Runnels v. Okamoto, 525 P.2d 1125, 1128 (Haw. 1974).  This privilege shields all but the most guilty nonjudicial officials from liability, but not from the imposition of a suit itself.  Towse, 647 P.2d at 702.  The privilege is the result of the Hawaii Supreme Court's balancing of competing interests.  It protects the innocent public servant's pocketbook, yet it allows an injured party to be heard.  See Medeiros v. Kondo, 522 P.2d 1269, 1272 (Haw. 1974).
>
> For a tort action to lie against a nonjudicial government official, the injured party must allege and demonstrate by clear and convincing proof that the official was motivated by malice and not by an otherwise proper purpose.  Towse, 647 P.2d at 702-03; Medeiros, 522 P.2d at 1272.  When a public official is motivated by malice, and not by an otherwise proper purpose, Hawaii law provides that the cloak of immunity is lost and the official must defend the suit the same as any other defendant.  Marshall v. Univ. of Haw., 821 P.2d 937, 946 (Haw. Ct. App. 1991), abrogated on other grounds by Hac v. Univ. of Haw., 73 P.3d 46 (Haw. 2003).
>
> . . . .
>
> Edenfield v. Estate of Willets, Civ. No. 05-00418 SOM-BMK, 2006 WL 1041724, at *11-12 (D. Haw. Apr. 14, 2006) (parallel citations omitted).

The Supreme Court of Hawai'i has held that "the phrase 'malicious or improper purpose' should

18

be defined in its ordinary and usual sense."
<u>Awakuni v. Awana</u>, 165 P.3d 1027, 1042 (Haw. 2007).
In <u>Awakuni</u>, the Supreme Court relied on Black's
Law Dictionary, which defines "malicious" as
"'[s]ubstantially certain to cause injury' and
'[w]ithout just cause or excuse'"; and defines
"malice" as "'[t]he intent, without justification
or excuse, to commit a wrongful act[,]' 'reckless
disregard of the law or of a person's legal
rights[,]' and '[i]ll will; wickedness of heart.'"
<u>Id.</u> (quoting Black's Law Dictionary 976-77 (8th
ed. 2004)).

<u>Long v. Yomes</u>, Civ. No. 11-00136 ACK-KSC, 2011 WL 4412847, at *6

(D. Hawai'i Sept. 20, 2011) (footnote omitted).

  Plaintiff does not allege the requisite malice in these

tort-based causes of action.  It is arguably possible, however,

for Plaintiff to cure the defects in these claims by amendment.

The Motion is GRANTED as to Plaintiff's fourth, fifth, and sixth

causes of action with respect to the failure to allege malice

sufficient to overcome the conditional privilege; these claims

are DISMISSED WITHOUT PREJUDICE.

## V. <u>Fourth Cause of Action - Negligent Supervision and Training</u>

  Plaintiff alleges that Kealoha and the City

"negligently failed and refused to properly adopt and enforce

policies, train, supervise, and/or discipline Defendants Davidson

and Lu . . . , and the staff of the Honolulu Police Department

when they improperly searched and seized Plaintiff and his

property, violated the knock and announce rule, and illegally

detained Plaintiff[.]"  [Complaint at ¶ 52.]  Kealoha argues that

Plaintiff fails to identify how Kealoha failed to train the

officers involved, how he was negligent in supervising in the

officers involved, or describe how he failed to discipline them

with regard to the incident at issue.

> To state a claim for negligent
> supervision/failure to control under Hawaii law, a
> plaintiff must allege that the employees who
> committed the wrongful acts were acting outside
> the scope of their employment. Pulawa v. GTE
> Hawaiian Tel, 112 Hawai'i 3, 143 P.3d 1205, 1220
> (2006). A negligent supervision claim is mutually
> exclusive with a claim based on *respondeat
> superior*, because the latter requires that the
> employee have acted within the scope of his
> employment. See Wong-Leong v. Hawaiian Indep.
> Refinery, Inc., 76 Hawai'i 433, 879 P.2d 538,
> 543-44 (1994).
> . . . .
> Although Plaintiff's negligent failure to
> supervise claim is inconsistent with his false
> arrest/respondeat superior claim, Plaintiff is
> entitled to plead the former claim in the
> alternative. See Fed. R. Civ. P. 8(d)(3) ("A
> party may state as many separate claims or
> defenses as it has, regardless of consistency.");
> Arthur v. U.S. By and Through Veterans Admin., 45
> F.3d 292, 296 (9th Cir. 1995).
>
> In order to state a claim for negligent
> supervision, however, Plaintiff nevertheless must
> allege that the police officers were acting
> outside the scope of their employment. See
> Pulawa, 143 P.3d 1205, 1220. Plaintiff must, in
> other words, include contradictory allegations in
> the Complaint.

Dawkins v. City of Honolulu, 761 F. Supp. 2d 1080, 1093 (D.

Hawai'i 2010). Plaintiff does not allege that any of the

officers were acting outside of the scope of their employment

with respect to his fourth cause of action. Further,

> [u]nder Hawaii law, before a plaintiff can
> establish a claim for negligent training and/or

> supervision, the plaintiff must establish that "the employer knew or should have known of the necessity and opportunity for exercising such control." Abraham v. S.E. Onorato Garages, 50 Haw. 628, 639, 446 P.2d 821, 826 (1968).  The key to any claim for negligent training or supervision is foreseeability.  If an employer has not been put on notice of the necessity for exercising a greater degree of control or supervision over a particular employee, the employer cannot be held liable as a matter of law.

Otani v. City & Cnty. of Haw., 126 F. Supp. 2d 1299, 1308 (D. Hawai'i 1998).

Plaintiff fails to plead additional facts identifying how Kealoha failed in his supervision, or any acts in which discipline was necessary, but not taken.  To the extent Plaintiff relies on extrinsic evidence of matters not set forth in the Complaint – i.e., that Plaintiff's counsel has attempted to discuss the 48-hour rule with Defendants – such allegations may not be considered in ruling on the Motion brought pursuant to Rule 12(b)(6).  As a general rule, "a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion."  Lee v. City of Los Angeles, 250 F.3d 668, 688 (9th Cir. 2001) (citation omitted).  The Court finds that none of the exceptions to this general rule applies in the instant case. See id. (discussing two exceptions; first, that a court may consider material which is properly submitted as part of the complaint, and if the documents are not physically attached to the complaint, they may be considered if their authenticity is

21

not contested and the plaintiff's complaint necessarily relies on them; second, that a court may take judicial notice of matters of public record.)

The Court finds that Plaintiff's allegations against Kealoha are not supported by relevant factual allegations, but simply state a legal conclusion.  For example, Plaintiff fails to plead facts identifying how Kealoha failed in his supervision, training, and hiring.  For these reasons, as well as those detailed above with respect to malice, the Motion is GRANTED IN PART AND DENIED IN PART as to Plaintiff's fourth cause of action, and the claim is DISMISSED WITHOUT PREJUDICE.

**VI.   Remaining Claims**

Plaintiff's seventh cause of action for IIED alleges that Kealoha acted in his individual capacity and outside the scope of his employment.  [Complaint at ¶¶ 58-59.]  His eighth cause of action alleges conversion, claiming that Kealoha and others "wrongfully exerted dominion and control over Plaintiff's truck, cash, and video surveillance equipment[.]"  [Id. at ¶ 61.] Plaintiff alleges in his ninth cause of action, entitled false imprisonment, that Kealoha and others unlawfully detained Plaintiff against his will.  [Id. at ¶ 67.]

With respect to these claims, Kealoha argues that he is simply lumped in with other Defendants, and is made the subject

22

of conclusory allegations in which he played no direct role. There are no allegations that he personally participated in this particular operation, therefore, the allegations in these claims make no sense when applied to him.  Plaintiff, on the other hand, argues that the underlying factual allegations that Kealoha was directly responsible for unduly prolonging Plaintiff's detention and the violation of the knock-and-announce rule plausibly support a reasonable inference of Kealoha's liability under the remaining causes of action.

For purposes of the instant Motion only, the Court finds that the allegations in the Complaint sufficiently allege conduct by Kealoha to maintain these causes of against him in his individual capacity.  The Motion is therefore DENIED as to causes of action seven, eight, and nine.

## VII. **Leave to Amend**

The Court has granted the Motion to dismiss several of the above-mentioned claims WITHOUT PREJUDICE.  Plaintiff is granted until **April 16, 2012** to file an Amended Complaint in order to cure the deficiencies noted in this Order.  The Court CAUTIONS Plaintiff that, if he fails to timely file an Amended Complaint, the claims which this Court has dismissed without prejudice will be automatically dismissed with prejudice. Further, if the Amended Complaint fails to address the defects identified in this Order, the Court may dismiss such claims with

23

prejudice.

The Court emphasizes that Plaintiff is not granted leave to add new parties, claims or theories of liability. If Plaintiff wishes to add new parties, claims or theories of liability, Plaintiff must either obtain a stipulation from all parties or move for leave to amend according to the deadlines in the Rule 16 Scheduling Order. The magistrate judge will rule upon such a motion in the normal course. The Court CAUTIONS Plaintiff that, if he includes new parties, claims or theories of liability in the Amended Complaint without obtaining either a stipulation or an order from the magistrate judge granting leave to amend, the new parties, claims, or theories of liability may be dismissed with prejudice.

## CONCLUSION

On the basis of the foregoing, Kealoha's Motion to Dismiss Plaintiff's Verified Complaint, filed December 8, 2011, is HEREBY GRANTED IN PART AND DENIED IN PART. The Motion is GRANTED as to the claims against Kealoha in his official capacity, and as to Plaintiff's second cause of action; these claims are DISMISSED WITH PREJUDICE against Kealoha. The Motion is GRANTED IN PART with respect to Plaintiff's first, fourth, fifth, and sixth causes of action; these claims are DISMISSED WITHOUT PREJUDICE and Plaintiff is GRANTED leave to amend them. The Motion is DENIED as to causes of action seven, eight, and

24

nine.  Plaintiff is GRANTED leave to file an Amended Complaint as set forth in this Order by **April 16, 2012**.

IT IS SO ORDERED.

DATED AT HONOLULU, HAWAII, March 22, 2012.



/S/ Leslie E. Kobayashi
Leslie E. Kobayashi
United States District Judge

RUSTIN I. SMITH VS. BLAKE DAVIDSON, ET AL.; CIVIL NO. 11-00498
LEK-RLP; ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT
LOUIS M. KEALOHA'S MOTION TO DISMISS PLAINTIFF'S VERIFIED
COMPLAINT