IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| RUSTIN I. SMITH, | ) | CIVIL NO. 11-00498 LEK-RLP |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| BLAKE DAVIDSON, ET AL., | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

**ORDER (1) DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AS TO LIABILITY OF DEFENDANTS CITY AND COUNTY OF HONOLULU AND LOUIS M. KEALOHA ON CLAIMS OF UNNECESSARILY DELAYED DETENTION; (2) GRANTING IN PART AND DENYING IN PART DEFENDANTS CITY AND COUNTY OF HONOLULU AND LOUIS M. KEALOHA'S MOTION FOR JUDGMENT ON THE PLEADINGS; AND (3) GRANTING DEFENDANT LOUIS KEALOHA'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

Before the Court are the following motions:

(1) Plaintiff Rustin I. Smith's ("Plaintiff") Motion for Summary Judgment as to Liability of Defendants City and County of Honolulu and Louis M. Kealoha on Claims of Unnecessarily Delayed Detention, filed on October 23, 2012 ("Plaintiff's Motion");

(2) Defendants City and County of Honolulu ("the City") and Louis M. Kealoha's (collectively "Defendants") Motion for Judgment on the Pleadings, filed on October 23, 2012 ("City Motion"); and

(3) Defendant Louis Kealoha's ("Kealoha") Motion for Partial Summary Judgment, filed on October 23, 2012 ("Kealoha Motion"). Plaintiff filed his memoranda in opposition on January 22, 2013, and the City and Kealoha filed their memoranda in opposition on March 4, 2013.  The parties filed their reply briefs on March 11,

2013.  These motions came on for hearing on March 25, 2013.
Appearing on behalf of Plaintiff were Eric Seitz, Esq., and
Ronald Kim, Esq.  Appearing on behalf of Defendants was Curtis
Sherwood, Esq.  After careful consideration of the motions,
supporting and opposing memoranda, and the arguments of counsel,
Plaintiff's Motion is DENIED, and the Kealoha Motion is GRANTED
for the reasons set forth below.  The City Motion is GRANTED IN
PART as to Plaintiff's state law claims and 42 U.S.C.
§ 1983 claims against Kealoha, and DENIED in all other respects.

**FACTUAL BACKGROUND**

Plaintiff filed his Verified Complaint For Damages,
Declaratory and Injunctive Relief ("Complaint") on August 17,
2011, against Defendants Blake Davidson ("Davidson"), William Lu
("Lu"), the City, the State, and Kealoha, alleging violations of
his federal rights under 42 U.S.C. § 1983 and various state-law
claims.[1]  This Court granted in part and denied in part Kealoha's
previous motion to dismiss in a March 12, 2012 Order.  The Court
granted Plaintiff leave to amend and Plaintiff filed his First
Amended Complaint on April 16, 2012.

Plaintiff is the President of Hard Knocks, Inc. ("Hard
Knocks"), which owns and operates two stores on Oahu.  [First
Amended Complaint at ¶¶ 4, 11.]  He alleges that, on April 12,

---

[1] On February 23, 2012, the parties stipulated to the
dismissal without prejudice of Plaintiff's claims against
Defendants Davidson and Lu.  [Dkt. no. 52.]

2

2011, the District Court of the First Circuit, Honolulu Division, filed an Anticipatory Search Warrant, which authorized law enforcement officials to search Plaintiff's residence for bath salts containing methylenedioxypyrovalerone ("MDPV").[2] That same day, approximately fifty law enforcement officers searched Plaintiff's residence and arrested him, seizing cash and a vehicle from the residence. Plaintiff was questioned by Honolulu Police Department ("HPD") detectives, and detained overnight without formal charges or the opportunity to appear in court or post bail. [Id. at ¶¶ 18-24.]

On the morning of April 13, 2011, an unidentified HPD detective questioned Plaintiff concerning the combinations to unlock the safes at his store locations. That same day, the District Court of the First Circuit, Honolulu Division, filed a Search Warrant based on an affidavit made by Davidson, which authorized law enforcement officials to search Hard Knocks' stores for bath salts containing MDPV and related paraphernalia and documentation. During the raids conducted pursuant to the Search Warrant, HPD arrested two Hard Knocks employees and seized cash from the stores. [Id. at ¶¶ 25-28.]

_____

[2] At and unspecified date, MDPV was designated a Schedule I drug under Haw. Rev. Stat. Chapter 329 on a temporary basis. Plaintiff alleges that he did not know he possessed any products containing MDPV, and that the Notice of Scheduling and Emergency Controlled Scheduling Action placing MDPV on Schedule I on an emergency basis was insufficient to inform him and the public of such change. [First Amended Complaint at ¶¶ 15-17.]

Plaintiff alleges that HPD continued to hold him on April 13, 2011 overnight without formal charges or the opportunity to appear in court or post bail.  On April 14, 2011, HPD read Plaintiff his rights, and released him later that afternoon.  Plaintiff has not been charged with any offense. Plaintiff alleges that an employee who was working at the Waikiki store quit and refuses to speak with him due to her arrest.  He closed both of his stores for a week because of the raids and because he did not know if he would be charged with a crime. [Id. at ¶¶ 29-33.]

Plaintiff asserts that his detention was improperly prolonged based on a policy or practice of the City and/or Kealoha of permitting officers "to arrest persons without a warrant and unnecessarily detain them for up to forty-eight hours without formal charges and/or admission to bail pending the Honolulu Police Department's determination of whether those persons could be charged with any crime" ("the 48 Hour Rule"). [Id. at ¶ 38.]

Plaintiff alleges the following causes of action: (1) a 42 U.S.C. § 1983 claim based on unreasonable searches and seizures, violation of the knock and announce rule, and unnecessarily prolonged detention; (2) denial of due process based on the vagueness of Haw. Rev. Stat. § 712-1242; (3) a challenge to Haw. Rev. Stat. § 329-11(e) based on the Hawai`i

4

Administrative Procedure Act; (4) "Alternative to Count I – Negligent Training/Supervision," a negligent training, supervision, and/or discipline claim against Kealoha and the City; (5) negligence claim against Kealoha and the City; (6) negligent infliction of emotional distress ("NIED") claim against Kealoha and the City; (7) intentional infliction of emotional distress ("IIED") claim against Kealoha and the City; (8) conversion claim against Kealoha; and (9) false imprisonment claim against Kealoha.

Kealoha, the Chief of HPD, is sued in his individual capacity.  Plaintiff alleges that Kealoha is personally and directly involved in the implementation, maintenance, enforcement, and continued use of the 48 Hour Rule.  [Id. at ¶¶ 7, 40-42.]

I.   **Plaintiff's Motion**

Plaintiff seeks summary judgment on his claims for unnecessarily delayed detention, arguing that HPD arrested and unnecessarily delayed his detention for over forty-seven hours before releasing him without charge, any hearing to determine probable cause, or opportunity to seek bail while it continued its investigation and attempted to build a case against him.  He contends that Defendants are liable for violating his rights pursuant to the 48 Hour Rule, an alleged official policy, custom, or practice, and for failing to adequately train officers to

prevent deliberate indifference based on the 48 Hour Rule.  [Mem. in Supp. of Plaintiff's Mot. at 1-2.]

Plaintiff's Motion notes that a state district court judge signed a determination that probable cause supported Plaintiff's warrantless arrest in a "Judicial Determination of Probable Cause For The Extended Restraint of Liberty of Warrantless Arrestee," ("JDPC") dated April 14, 2011, but states that this document was not filed.  [Id. at 4-5.]

Plaintiff asserts that the 48 Hour Rule is codified in a written policy that allows officers a maximum of forty-eight hours following a warrantless arrest to release or bring the arrestee for a probable cause hearing or determination, but this written policy also instructs officers that they must avoid unnecessary delay in charging an arrestee and having necessary judicial hearings and determinations.  Plaintiff contends that the written policy has conflated "unnecessary delay" with the forty-eight-hour maximum time limit, erroneously believing that the release of a warrantless arrestee may be delayed "for the sake of delay" for up to forty-eight hours.  [Id. at 5-6.]

According to Plaintiff, HPD Major Richard Robinson authored a document titled "Limitations of the '48 Hour Rule'", dated January 20, 2011.  Plaintiff indicates that it states that officers may only hold arrestees to complete necessary administrative steps, after which the arrestee should be charged

or released as soon as possible.  Plaintiff received this document from the City in discovery and does not know the effect and weight of it or whether it has been published and circulated internally within the HPD.  [Id. at 6 & n.1.]  The document identifies administrative steps of completing paperwork, searching the arrestee, inventorying property, obtaining fingerprints, taking photographs, checking for a prior arrest or criminal record, performing laboratory tests, interrogating the arrestee, verifying the arrestee's alibi, ascertaining similarities to related crimes, and performing an identification line-up.  Major Robinson stated that officers may continue to hold a suspect for up to forty-eight hours to obtain additional evidence after the court has determined probable cause existed to arrest that individual.  Plaintiff alleges that, despite being aware of the problems with the 48 Hour Rule, Kealoha has refused to discuss the issue with Plaintiff's counsel.  Plaintiff contends that Defendants' legal advisers corresponded about concerns over the practice in 2002, and Major Robinson's memo is "an apparent effort to address the widespread abuse of the 48 Hour Rule which causes a multitude of ongoing constitutional violations."  [Id. at 6-8, 17.]

According to Plaintiff, Defendants cannot proffer any legitimate reason for detaining and holding him for over forty-seven hours following his arrest pursuant to the 48 Hour Rule.

He was not injured, sick, in need of medical attention, or intoxicated at the time of his arrest and he had been transported without incident to the Main Station.  He claims that Defendants detained him without regard for being reasonably prompt or avoiding unnecessary delay in deciding whether to charge or release him.  He claims that, because HPD withheld the decision of whether to release or charge him pursuant to the 48 Hour Rule, and because he was never charged, he never had the opportunity to seek bail.  [Id. at 13-14.]

Plaintiff argues that, even if the City has a formal written policy to the contrary, it can be liable because the longstanding custom or practice of HPD officers "applying the rule shows they believe that they can unnecessarily delay a warrantless arrestee's detention."  [Id. at 16.]  He also argues that Kealoha is liable as a supervisor because of his implementation, maintenance, enforcement, and continued allowance of the 48 Hour Rule.  [Id. at 20-21.]

A.    **Defendants' Opposition**

Defendants argue that Plaintiff mischaracterizes the 48 Hour Rule, and assert that the policy has changed over time, but has always emphasized that a judicial determination of probable cause must be obtained as soon as practicable.  [Mem. in Opp. to Plaintiff's Mot. at 6-7.]  They note that the administrative steps incident to Plaintiff's arrest were not completed by the

time of his release because the results of the laboratory test were not related to the officers until after the JDPC had issued. Defendants also argue that the officers' desire to prevent destruction of evidence justified Plaintiff's detention because Plaintiff was using his home as a warehouse to store inventory for his business and "Plaintiff was using his two head shops to sell controlled substances." [Id. at 9.]

They claim that Kealoha cannot be liable for failing to adopt a new policy where the alleged improper procedure is based upon a single incident. [Id. at 8.] Defendants argue that they are entitled to judgment as a matter of law on this issue, or alternatively, that there are genuine issues of material fact precluding summary judgment for Plaintiff. [Id. at 10.]

**B.  Plaintiff's Reply**

In his reply, Plaintiff states that Defendants "admit that the administrative steps incident to Plaintiff's arrest were not completed in a timely manner because they continued to investigate to determine whether he should ever have been arrested in the first place[.]" [Plaintiff's Reply at 2.] According to Plaintiff, this admission confirms that his detention was unduly prolonged because it was not permissible to detain him while lab work was being completed and HPD was unable to perform this lab work at the time of his arrest. [Id. at 2-3.]

Plaintiff maintains that Kealoha is liable here because Plaintiff has not generally alleged administrative negligence, but is specifically challenging the policy and practice of the 48 Hour Rule.  He contends that Kealoha is responsible for the continuing policy and practice because he admittedly is responsible for maintaining, implementing, and/or allowing the continued use and/or operation of all such HPD policies.  [Id. at 7 (citing Kealoha Decl. at ¶¶ 4-5).]

## II.  **Defendants' Motions**

### A.  **City Motion**

Defendants move for judgment on the pleadings with respect to Counts I, IV, V, and VI.

#### 1.  **Fourth Amendment**

They first argue that Plaintiff's Fourth Amendment claim is not based on any allegation of an untimely probable cause determination.  They note that, under County of Riverside v. McLaughlin, 500 U.S. 44 (1991), the Fourth Amendment does not require an immediate determination of probable cause upon completing the administrative steps incident to arrest.  They claim that Plaintiff cannot assert "systematic challenges" to HPD policy and procedure if a probable cause determination was made within forty-eight hours.  They further contend that Plaintiff cannot successfully challenge his own individual detention based on unreasonable delay because the Ninth Circuit, in United States

10

v. Bueno-Vargas, 383 F.3d 1104, 1107 (9th Cir. 2004), concluded
that the timing of the judicial determination controls, not the
timing of the filing of charges.  Defendants argue that the
failure to set bail likewise is not dispositive; rather, where
bail is provided, it should be made promptly, and Plaintiff was
released here within forty-eight hours without posting any surety
whatsoever.  [Mem. in Supp. of City Mot. at 7-11.]

        Defendants next argue that Plaintiff fails to state a
claim in light of the qualified immunity afforded HPD officers
and Kealoha.  They state that there is no allegation that
probable cause was not determined within forty-eight hours or
that the determination was delayed based upon improper reasons.
They argue that, even if Plaintiff's contentions that he should
have been charged and/or had bail set sooner are correct, they
were not clearly established law at the time of Plaintiff's
detention.  [Id. at 11-13.]

        Kealoha also argues that Plaintiff fails to state a
claim for supervisor liability under § 1983 because Plaintiff has
not alleged personal involvement by Kealoha or that Kealoha set
into motion a series of acts by others.  Defendants argue that
Kealoha believed that HPD's purported compliance with McLaughlin
would mean that HPD was constitutionally compliant.  [Id. at 14.]

        Defendants next argue that Plaintiff does not
sufficiently allege a § 1983 municipal liability claim against

11

the City based upon either (1) a policy, custom, or practice; or (2) improper training.  They assert that there is no constitutional violation based on a systematic attack of HPD's polices and procedures, and therefore, no claim based upon a policy, custom, or practice pursuant to <u>Monell v. Department of Social Services</u>, 436 U.S. 658 (1978).  With respect to negligent training and supervision under § 1983, Defendants argue that the City's training is in compliance with rules that are not "obviously deficient," and that the City was not deliberately indifferent to Plaintiff's constitutional rights.  [<u>Id.</u> at 15-17.]

### 2.  State Law Claims

As to Plaintiff's state law claim for negligent training and supervision, Defendants argue that: (1) Plaintiff fails to plead facts to support his claim that unnamed HPD officers were acting outside the course and scope of their employment; (2) Plaintiff fails to allege nonconclusory facts that Kealoha had knowledge of any deficiency related to the unnamed HPD officers; and (3) Plaintiff fails to allege how the City was deficient in its training or supervision of the officers.  [<u>Id.</u> at 17-18.]

Defendants argue that Plaintiff's negligence claim fails because he did not plead a legal duty owed to him or sufficient facts to infer a breach of duty or causation.  [<u>Id.</u> at

20-21.]  They argue that his NIED claim fails for the same
reasons, and because he fails to allege physical injury or facts
justifying an exception to this general rule.  [Id. at 21-22.]

Last, Defendants assert that Plaintiff's state law
claims are subject to the common law defense of conditional
privilege.  They claim that Plaintiff states the legal conclusion
that Kealoha and HPD officers acted with malice, without
nonconclusory facts to support a plausible claim of malice.  They
argue that Plaintiff likewise fails to state a claim for relief
against the City because, under the doctrine of *respondeat
superior*, if an employee is immune from liability, so too is his
or her employer.  [Id. at 22-24.]

B.   **Kealoha Motion**

Kealoha seeks summary judgment on Counts VII (IIED),
VIII (Conversion), and IX (False Imprisonment), and asks the
Court to dismiss the Doe Defendants.  Kealoha argues that the
claims against him are premised on intentional conduct that did
not take place because he did not, "exert dominion and control
over Plaintiff's truck, cash, and video surveillance equipment"
(quoting First Amended Complaint at ¶¶ 17-19), nor did he falsely
imprison Plaintiff or intentionally cause him to suffer emotional
distress.  [Mem. in Supp. of Kealoha Mot. at 4-5.]

He also argues that Plaintiff's claims are subject to
the state common law defense of conditional privilege, and that

13

Plaintiff cannot establish "actual malice" by clear and convincing evidence. [Id. at 12-13.]

### 1.   **IIED**

According to Kealoha, Plaintiff complains that his detention was improperly prolonged based on policies and practices implemented and maintained by Defendant Kealoha, but Kealoha argues that there is no evidence that this was done intentionally or recklessly.  In addition, he argues that there is no evidence that Plaintiff's emotional distress was caused intentionally by Kealoha.  He further claims that Plaintiff has not shown that the implementation and maintenance of policies and practices is "outrageous" conduct that goes beyond the bounds of decency. [Id. at 8-9.]

### 2.   **Conversion**

As to Plaintiff's claim that Kealoha wrongfully exerted dominion and control over Plaintiff's truck, cash, and video surveillance equipment, Kealoha argues that there is no evidence to support this contention.  Rather, the facts indicate that Kealoha did not personally seize these assets or direct anyone to do so, and Kealoha did not personally possess or control any of Plaintiff's assets. [Id. at 10.]

### 3.   **False Imprisonment**

Kealoha claims that there is no evidence to support Plaintiff's false imprisonment claim, and that Kealoha did not

14

direct or personally detain or restrain Plaintiff in any way. [Id. at 11.]

### 4. Doe Defendants

Defendants seeks the dismissal of the three intentional tort claims against the John/Jane Doe Officers because Plaintiff has failed to specifically identify them, despite the opportunity to do so, and because the deadline to make such an amendment was June 29, 2012. [Id. at 13-14.]

### C. Plaintiff's Memoranda in Opposition

### 1. Opposition to the City Motion

Plaintiff argues that Defendants ignore cases in which courts have assessed the rights of warrantless arrestees, emphasizing that the police should make "every attempt to minimize" the time that the warrantless arrestee, a presumptively innocent individual, spends in jail. [Mem. in Opp. to City Mot. at 3 (quoting McLaughlin, 500 U.S. at 58).] He argues that "promptness" is key as the police are only allowed reasonable or necessary delays in dealing with submitting a warrantless arrestee for a probable cause determination and/or releasing the arrestee on bail. He asserts that it is considered unreasonable and/or unnecessary to delay a warrantless arrestee's detention to "gather evidence, interview witnesses, and build a case," or to "delay [a warrantless arrestee's detention] for delay's sake." [Id. at 3-4 (quoting McLaughlin, 500 U.S. at 56-57).]

He contends that Defendants are not entitled to qualified immunity because it is clear that police do not have carte blanche to unduly prolong the detention of a warrantless arrestee so long as the arrestee receives a probable cause determination, is admitted to bail, or is released within forty-eight hours of arrest. [Id. at 4.]

According to Plaintiff, Defendants owed him a duty of reasonable care, which they breached by violating the knock-and-announce rule when they broke into and searched his residence, and by unreasonably delaying his detention. He claims he states an NIED claim without having to allege a predicate physical injury because his psychological distress is genuine, and because an exception should apply. [Id. at 4-5.]

## 2.  Opposition to Kealoha Motion

Plaintiff argues that the Kealoha Motion should be denied because there are genuine issues of material fact regarding the IIED claim, whether Kealoha acted with malice, and whether Plaintiff had ample opportunity to identify the HPD officers who violated the knock-and-announce rule and unreasonably delayed his detention. He states that, in their Initial Disclosures, Defendants identified approximately fifty-one Honolulu Police officers and/or employees as persons who may have knowledge of discoverable information on liability and/or damages that may be used by the parties in support of their

16

claims and defenses.  He also argues that there is sufficient evidence that Kealoha had notice of the unconstitutionality of the 48 Hour Rule, but nevertheless intentionally maintained the policy, which was sure to cause extreme emotional distress to detainees.

###    D.    **Defendants' Reply**

In their reply in support of the Kealoha Motion, Defendants argue that Kealoha did not act with malice and maintain that the Doe Defendants should be dismissed because of Plaintiff's lack of diligence in identifying them.  Defendant did not file a reply in support of the City Motion.

### STANDARD

Pursuant to Federal Rule of Civil Procedure 56(a), a party is entitled to summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Generally, when matters outside the pleadings are considered, a motion for judgment on the pleadings must be construed as one for summary judgment under Rule 56 of the Federal Rules of Civil Procedure. See Fed. R. Civ. P. 12(d).

### DISCUSSION

### I.    **Fourth Amendment Claims**

###    A.    **48 Hour Rule**

Plaintiff seeks summary judgment and Defendants seek

judgment on the pleadings with respect to Plaintiff's § 1983
claim alleging violations of the Fourth Amendment.  Plaintiff
alleges that he was subjected to an unnecessarily prolonged
detention pursuant to the HPD's 48 Hour Rule.

A state "must provide a fair and reliable determination
of probable cause as a condition for any significant pretrial
restraint of liberty, and this determination must be made by a
judicial officer either before or promptly after arrest."
Gerstein v. Pugh, 420 U.S. 103, 125 (1975).  "[A] jurisdiction
that provides judicial determination of probable cause within 48
hours of arrest will, as a general matter, comply with the
promptness requirement of Gerstein."  McLaughlin, 500 U.S. at 56.
A hearing that occurs within forty-eight hours, however, "may
nonetheless violate Gerstein if the arrested individual can prove
that his or her probable cause determination was delayed
unreasonably."  Id.  Under Hawai'i law, "[a]s soon as practicable
. . . [but] not later than 48 hours after the warrantless arrest
of a person held in custody, a district judge shall determine
whether there was probable cause for arrest."  Haw. R. Pen. P.
Rule 5(a)(2).

Plaintiff contends that HPD's policy has conflated
"unnecessary delay" with the forty-eight-hour maximum time limit,
erroneously believing that the release of a warrantless arrestee
may be delayed "for the sake of delay" for up to forty-eight

hours.  Defendants argue that, in this case, the administrative steps incident to arrest were not completed by the time of Plaintiff's release, and that the results of laboratory tests were not passed on to the HPD officers until after the issuance of the JDPC.  Plaintiff counters that it was not permissible for HPD to detain him while this lab work was being completed, and where HPD was unable to complete the work in a timely fashion.

Gerstein does not specifically define "administrative steps incident to arrest."  420 U.S. at 125.  The Ninth Circuit has held "that this very phrase suggests a somewhat flexible approach to what qualifies as an administrative step. . . .  We believe that the Court employed the phrase 'incident to' in Gerstein because it recognized that police departments need some flexibility in prescribing their methods of processing different suspects."  Kanekoa v. City & Cnty. of Honolulu, 879 F.2d 607, 610 (9th Cir. 1989).

> As the Fourth Circuit has observed "administrative steps incident to a particular arrest will necessarily vary with geographical factors and with local police and court system practices as well as with innumerable factual exigencies." Fisher v. Washington Metropolitan Area Transit Authority, 690 F.2d 1133, 1140 (4th Cir. 1982). In Sanders v. City of Houston, 543 F. Supp. 694 (S.D. Tex. 1982) (Sanders), aff'd mem., 741 F.2d 1379 (5th Cir. 1984), the court rejected the interpretation of "administrative steps" as limited to transportation to the station, booking, and filing charges.  The court looked to cases construing Fed. R. Crim. P. 5(a) for guidance on what procedures should be permissible before an accused is taken before a judicial officer.  The

19

> court concluded that "administrative steps"
> included "completing paperwork, searching the
> suspect, inventorying property, fingerprinting,
> photographing, checking for prior record,
> laboratory testing, interrogating the suspect,
> verifying alibis, ascertaining similarities to
> other related crimes, and conducting line-ups."
> Id. at 700.
>
> . . . .
>
> The question then is whether the delays were
> longer than necessary . . . .  The issue is not
> determined solely by counting hours and minutes.
> Instead, the totality of the circumstances must be
> evaluated. . . .
>
> We agree that the fourth amendment does not
> permit the police to detain a suspect merely to
> investigate.  Such conduct does not constitute
> "administrative steps incident to arrest."
> Indeed, it is inimical to the fourth amendment for
> the police to arrest now, and investigate later
> for probable cause.

Id. at 610-12 (citations omitted).

In the instant case, there appear to be questions of

fact regarding whether administrative steps were completed in a

timely manner, or if the delays were longer than necessary.

Officer Lu states that on April 12, 2011, he instructed Officer

Jon Thomas ("Thomas") to arrest Plaintiff.  On April 13, 2011,

HPD Criminalist Jeanette Ardiente ("Ardiente") notified Lu that

she had received a standard sample of MDPV, and Lu ordered

testing of all the bath salt packets that were contained in the

parcel received by Plaintiff.  The next morning, on April 14,

2011, Ardiente informed Lu that she did not have sufficient time

to perform the analysis, but she did confirm that packets tested

20

earlier contained MDPV. [Decl. of William Lu ("Lu Decl.") at ¶¶ 22, 26-28.]

According to Lu, he interviewed Shane Sochocki, the Sales Manager at Plaintiff's Wahiawa shop, on April 14, 2011 at 11:11 a.m. Sochocki stated the he received a telephone call on April 12, 2011 around 5:00 p.m. from an unknown male caller telling him that he needed to get all the bath salts and herbal incense out of the store. Sochocki then removed these items from the store, but agreed to turn them over to the police. [Lu Decl. at ¶¶ 29-31.]

Officer Thomas prepared an affidavit in support of a JDPC on April 12, 2011, which was notarized by Officer Joseph Hanawahine ("Hanawahine") that same day. According to Thomas, he does "not recall why the District Court Judge did not sign the JDPC on April 12th. However, it may have been because we wanted to make sure that the substance was confirmed as MDPV by the Crime Lab and the Crime Lab was waiting for a standard sample to compare Plaintiff's drugs to." [Decl. of Jon Thomas ("Thomas Decl.") at ¶¶ 20-24.]

According to Ardiente, on April 12, 2011, she received requests from Lu and Hanawahine to analyze foil packets for the presence of MDPV. She retrieved the foil packets at 8:30 p.m. that day from the evidence custodian. She was not able to confirm the presence of MDPV at that time because she had not

received the recognized laboratory standard sample of the
substance.  The following day, April 13, 2011, she received a
comparison standard sample, and notified Lu.  Shortly thereafter,
Lu submitted a request asking that several hundred packets be
tested for MDPV, and Ardiente understood the request to be
urgent.  [Decl. of Jeanette Ardiente ("Ardiente Decl.") at ¶¶ 14-
20.]

Ardiente was not able to test all of the material
"within the time needed."  [Ardiente Decl. at ¶ 22.]  She states,
however, that she was

> able to confirm that the three substances, earlier
> tested on or about April 6th and taken from
> packages identical to these 297, did indeed
> contain MDPV by using a vial left over from the
> previous run to compare with the data taken from
> testing the standard comparison sample.  This
> analysis was conducted after 6 p.m. on the evening
> of April 13th.

[Id.]  Ardiente states that she "relayed this information to
Officer Lu on the morning of April 14th."  [Id. at ¶ 23.]  There
is no indication in the record as to why there was a delay in
reporting the laboratory results to the officers until the next
morning, and Plaintiff provides no evidence that this delay was
unreasonable.  Accordingly, there is no explanation in the record
for the apparent delay in completing the administrative steps, or
whether this delay was necessary or reasonable.  "Examples of
unreasonable delay are delays for the purpose of gathering
additional evidence to justify the arrest, a delay motivated by

22

ill will against the arrested individual, or delay for delay's sake.  In evaluating whether the delay in a particular case is unreasonable, however, courts must allow a substantial degree of flexibility."  McLaughlin, 500 U.S. at 56.  Based on the current record, the Court cannot say as a matter of law that this delay was reasonable or unreasonable under the totality of the circumstances.  The Court therefore DENIES the parties' motions with respect to Plaintiff's Fourth Amendment claim for delayed detention.

      B.   **Qualified Immunity**

      Defendants also argue that they are entitled to qualified immunity on Plaintiff's § 1983 claim.  "The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"  Pearson v. Callahan, 555 U.S. 223, 129 S. Ct. 808, 815 (2009) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)).  In analyzing the qualified immunity defense, the court must determine: (1) "whether the facts that a plaintiff has alleged or shown make out a violation of a constitutional right"; and (2) "whether the right at issue was 'clearly established' at the time of [the] defendant's alleged misconduct."  Id. at 816.  It is within the Court's discretion to decide "which of the two prongs of the

qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." Id. at 818; Mueller v. Auker, 576 F.3d 979, 993 (9th Cir. 2009).  Because the Court finds, at this time, that there is an issue of fact with respect to Plaintiff's Fourth Amendment claim, and because the parties have not briefed the issue extensively, the Court does not reach the issue of whether Defendants are entitled to a qualified immunity defense.

In sum, both Plaintiff's Motion and the City Motion are DENIED WITHOUT PREJUDICE with respect to Plaintiff's Fourth Amendment claim.

## II.   City Motion

The Court next turns to Defendants' remaining arguments in the City Motion.

### A.   Section 1983 Claim Against Kealoha

Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior.  Rather, each government official may only be held liable for his or her own misconduct.  A defendant may be held liable as a supervisor under § 1983 if either (1) he or she was personally involved in the constitutional deprivation, or (2) there is a sufficient causal connection between the supervisor's wrongful conduct and the Constitutional violation. Starr v. Baca, 633 F.3d 1191, 1196 (9th Cir. 2011).  In general,

a plaintiff "must allege that every government defendant--supervisor or subordinate--acts with the state of mind required by the underlying constitutional provision. Or. State Univ. Student Alliance v. Ray, 699 F.3d 1053, 1070 (9th Cir. 2012). Conversely, where there is no evidence that the supervisor was personally involved or connected to the alleged violation, the supervisor may not be held liable. See Edgerly v. City & Cnty. of San Francisco, 599 F.3d 946, 961-62 (9th Cir. 2010).

Here, Plaintiff does not establish any issue of fact as to personal involvement by Kealoha with respect to Plaintiff's alleged unreasonably delayed detention or any failure to train that amounts to deliberate indifference to Plaintiff's rights. See Hydrick v. Hunter, No. 03-56712, 2012 WL 89157, at *4 (9th Cir. Jan. 12, 2012) ("The absence of specifics is significant because, to establish individual liability under 42 U.S.C. § 1983, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution. Even under a deliberate indifference theory of individual liability, the Plaintiffs must still allege sufficient facts to plausibly establish the defendant's knowledge of and acquiescence in the unconstitutional conduct of his subordinates." (citation and quotation marks omitted)). Here, Plaintiff has provided no evidence of personal involvement by Kealoha in Plaintiff's detention, or how Kealoha would know or

25

reasonably should know that injury would result.  Additionally, Plaintiff has pled no facts indicating that Kealoha set into motion "a series of acts by others" that Kealoha knew would violate the Constitution.  In sum, Plaintiff fails to raise a triable issue of fact with respect to his claim against Kealoha for supervisory liability under § 1983.  The City Motion is therefore GRANTED as to Plaintiff's § 1983 claim against Kealoha.

### B. __Section 1983 Municipal Liability Claim__

A plaintiff may establish municipal liability by demonstrating that (1) the constitutional tort was the result of a "longstanding practice or custom which constitutes the standard operating procedure of the local government entity; (2) the tortfeasor was an official whose acts fairly represent official policy such that the challenged action constituted official policy; or (3) an official with final policy-making authority delegated that authority to, or ratified the decision of, a subordinate." __Price v. Sery__, 513 F.3d 962, 966 (9th Cir. 2008).

Defendants argue that Plaintiff does not sufficiently allege a § 1983 municipal liability claim against the City based upon either (1) a policy, custom, or practice; or (2) improper training.  They assert that Plaintiff does not establish a claim based upon a policy, custom, or practice pursuant to __Monell v. Department of Social Services__, 436 U.S. 658 (1978).  Because the Court finds that there is a question of fact regarding

26

Plaintiff's Fourth Amendment claim, based on the current record, the Court likewise rejects the City's argument that there is no constitutional violation based on HPD's policies and procedures as a matter of law.

With respect to negligent training under § 1983, Defendants argue that the City's alleged training is in compliance with rules that are not "obviously deficient" and that the City was not deliberately indifferent to Plaintiff's constitutional rights.  Regarding a municipality's failure to train its police officers, this district court has stated:

> Where a claim is based upon a failure to properly train police officers, liability may be imposed "only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact."  Price, 513 F.3d at 973 (citations omitted).  To prove deliberate indifference, a plaintiff must demonstrate that the county made a conscious or deliberate choice "to risk a 'likely' violation of constitutional rights."  Id.  "[This] standard is objective in that it does permit a fact finder to infer 'constructive' notice of the risk where it was 'obvious' - but this is another way of saying that there needs to be some evidence that tends to show a conscious choice."  Id.  "'[D]eliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action."  Bd. of County Comm'rs of Bryan County, Okl. v. Brown, 520 U.S. 397, 410, 117 S. Ct. 1382, 137 L. Ed. 2d 626 (1997).

> The Supreme Court has explained that a deficient training "program," [is] necessarily intended to apply over time to multiple employees.  Existence of a "program" makes proof of fault and causation at least possible in an inadequate training case.  If

27

> a program does not prevent constitutional
> violations, municipal decisionmakers may
> eventually be put on notice that a new
> program is called for.  Their continued
> adherence to an approach that they know or
> should know has failed to prevent tortious
> conduct by employees may establish the
> conscious disregard for the consequences of
> their action - the "deliberate indifference"
> - necessary to trigger municipal liability.

> Id. at 407 (citation omitted); see also Otani v.
> City & County of Hawaii, 126 F. Supp. 2d 1299,
> 1304 (D. Haw. 1998) ("[T] he County can be held
> liable under Section 1983 for its failure to
> properly supervise or train its employees where
> such failure evidences a deliberate indifference
> to the constitutional rights of Plaintiff.")

Schmedes v. Moniz, Civ. No. 08-00331 DAE-LEK, 2009 WL 3398933, at

*3-4 (D. Hawai'i Oct. 22, 2009) (alteration in Schmedes).

> This district court has further stated:

> Liability may only be imposed for failure to train
> when that failure "reflects a 'deliberate' or
> 'conscious' choice by a municipality." [City of]
> Canton [v. Harris], 489 U.S. [378,] 389, 109 S.
> Ct. 1197 [1989].  Further, failure to train claims
> "can only yield liability against a municipality
> where that city's failure to train reflects
> deliberate indifference to the constitutional
> rights of its inhabitants."  Id. at 392, 489 U.S.
> 378, 109 S. Ct. 1197, 103 L. Ed. 2d 412.  Given
> these restrictions on municipal liability, a
> plaintiff seeking to impose liability against a
> county for failure to train must show: "(1) [A]n
> inadequate training program, (2) deliberate
> indifference on the part of the County in
> adequately training its law enforcement officers,
> and (3) [that] the inadequate training 'actually
> caused' a deprivation of [a plaintiff's]
> constitutional rights." Merritt v. County of
> L.A., 875 F.2d 765, 770 (9th Cir. 1989); see also
> Gibson v. County of Washoe, 290 F.3d 1175, 1194
> (9th Cir. 2002) (setting forth a similar
> three-prong test) (citation omitted).  Notably,

28

the county policy amounting to deliberate
indifference "can be one of action or inaction."
Long v. County of L.A., 442 F.3d 1178, 1185 (9th
Cir. 2006) (citing Canton, 489 U.S. at 388, 109 S.
Ct. 1197, 103 L. Ed. 2d 412).

Wereb v. Maui Cnty., 727 F. Supp. 2d 898, 921 (D. Hawai'i 2010),

reconsideration granted in part on other grounds, 830 F. Supp. 2d

1026 (D. Hawai'i 2011) (alterations in Wereb) (footnote omitted).

Here, the municipal liability claims are tied to

whether the City's 48 Hour Rule and detention policies are

constitutional.  Accordingly, the Court cannot determine as a

matter of law whether Plaintiff can maintain his municipal

liability claim based on a failure to train theory, and DENIES

the City Motion WITHOUT PREJUDICE.

In sum, the Court GRANTS the City Motion with respect

to the § 1983 claims against Kealoha, and DENIES the City Motion

as to Plaintiff's municipal liability claims.  The City's Motion

is DENIED WITHOUT PREJUDICE in all other respects not

specifically set forth above.[3]  The Court addresses the City's

arguments regarding Plaintiff's state law claims below in

conjunction with its analysis of the application of the

conditional privilege to Kealoha.

---

[3] This includes the City's arguments regarding Plaintiff's
standing to bring a declaratory action, which were briefed in a
cursory fashion by both parties.

II. __Kealoha Motion__

    A.   __Conditional Privilege__

        Plaintiff alleges that Kealoha acted with malice, which is required to overcome the "qualified or conditional privilege" recognized by Hawai'i law.  As this district court has recognized:

> Hawaii law provides that a nonjudicial government official has a qualified or conditional privilege with respect to his or her tortious actions taken in the performance of his or her public duty.  Towse v. State of Hawaii, 647 P.2d 696, 702 (Haw. 1982); Runnels v. Okamoto, 525 P.2d 1125, 1128 (Haw. 1974).  This privilege shields all but the most guilty nonjudicial officials from liability, but not from the imposition of a suit itself.  Towse, 647 P.2d at 702. The privilege is the result of the Hawaii Supreme Court's balancing of competing interests.  It protects the innocent public servant's pocketbook, yet it allows an injured party to be heard.  See Medeiros v. Kondo, 522 P.2d 1269, 1272 (Haw. 1974).
>
>     For a tort action to lie against a nonjudicial government official, the injured party must allege and demonstrate by clear and convincing proof that the official was motivated by malice and not by an otherwise proper purpose.  Towse, 647 P.2d at 702-03; Medeiros, 522 P.2d at 1272.  When a public official is motivated by malice, and not by an otherwise proper purpose, Hawaii law provides that the cloak of immunity is lost and the official must defend the suit the same as any other defendant.  Marshall v. Univ. of Haw., 821 P.2d 937, 946 (Haw. Ct. App. 1991), abrogated on other grounds by Hac v. Univ. of Haw., 73 P.3d 46 (Haw. 2003).
>
>     . . . .
>
> Edenfield v. Estate of Willets, Civ. No. 05-00418 SOM-BMK, 2006 WL 1041724, at *11-12 (D. Haw. Apr.

14, 2006) (parallel citations omitted).

> The Supreme Court of Hawai'i has held that "the phrase 'malicious or improper purpose' should be defined in its ordinary and usual sense." Awakuni v. Awana, 165 P.3d 1027, 1042 (Haw. 2007). In Awakuni, the Supreme Court relied on Black's Law Dictionary, which defines "malicious" as "'[s]ubstantially certain to cause injury' and '[w]ithout just cause or excuse'"; and defines "malice" as "'[t]he intent, without justification or excuse, to commit a wrongful act[,]' 'reckless disregard of the law or of a person's legal rights [,]' and '[i]ll will; wickedness of heart.'" Id. (quoting Black's Law Dictionary 976-77 (8th ed. 2004)).

Long v. Yomes, Civ. No. 11-00136 ACK-KSC, 2011 WL 4412847, at *6 (D. Hawai'i Sept. 20, 2011) (footnote omitted).  Although proving subjective motivation by clear and convincing evidence may be a difficult standard for Plaintiff to meet, that is the burden that the Hawai'i Supreme Court has adopted in its effort to balance competing interests.

Kealoha states that he is not personally familiar with Plaintiff, has never met him, and did not direct HPD to seize his assets or detain him.  [Kealoha Decl. at ¶¶ 1-7, 9.]  According to Kealoha, he did not personally possess or control any of Plaintiff's assets.  Plaintiff points to nothing in the record that raises a genuine issue of fact as to whether Kealoha himself was motivated by actual malice, or even aware of the specific events complained of in the First Amended Complaint.  Rather, Plaintiff contends that, despite being aware of problems with the 48 Hour Rule, Kealoha has refused Plaintiff's counsel's request

31

to discuss the issue.  Because Plaintiff fails to elicit evidence to counter Kealoha's showing that he was not motivated by an improper purpose, Plaintiff cannot establish actual malice by clear and convincing evidence.  Accordingly, even though the existence of malice is generally a question for the jury, the Court finds that there is no evidence of malice and summary judgment is warranted.  As a result, Plaintiff's state law claims are barred because Kealoha is shielded from liability for these allegedly tortious acts.  To the extent Kealoha is not liable with respect to the state law claims, the City is not vicariously liable to Plaintiff.  Because the Court finds that Kealoha is protected by the conditional privilege, it does not address his alternative arguments.

Likewise, to the extent Plaintiff alleges state law tort claims against individual HPD officers, supported only by the legal conclusion that they acted with malice, without nonconclusory facts to support a plausible claim of malice, the City Motion is GRANTED.  In sum, the Kealoha Motion and the City Motion are GRANTED with respect to Kealoha and individual HPD officers' entitlement to the state law conditional privilege.

**B.    Doe Defendants**

Plaintiff alleges these same three intentional tort claims against John or Jane Doe Defendants 1-15.  Here, Plaintiff has known the identities of the HPD officers involved since at

least January 31, 2012, when the City filed its Initial Disclosures setting forth the officers' identities. [Decl. of Curtis Sherwood at ¶¶ 4-5.] Plaintiff did not amend his pleadings to specifically identify any other officers, and the deadline to do so expired on June 29, 2012. As a result, all claims against the Doe Defendants are dismissed. The Kealoha Motion is GRANTED with respect to the Doe Defendants.

## CONCLUSION

On the basis of the foregoing, Plaintiff Rustin I. Smith's Motion for Summary Judgment, filed on October 12, 2012, is HEREBY DENIED WITHOUT PREJUDICE. Defendants City and County of Honolulu and Louis M. Kealoha's Motion for Judgment on the Pleadings, filed on October 23, 2012, is HEREBY GRANTED IN PART as to Plaintiff's state law claims and 42 U.S.C. § 1983 claims against Kealoha, and DENIED WITHOUT PREJUDICE in all other respects. Defendant Louis Kealoha's Motion for Partial Summary Judgment, filed on October 23, 2012, is HEREBY GRANTED.

IT IS SO ORDERED.

DATED AT HONOLULU, HAWAII, May 31, 2013.



   /S/ Leslie E. Kobayashi
Leslie E. Kobayashi
United States District Judge


RUSTIN I. SMITH VS. BLAKE DAVIDSON, ET AL.; CIVIL NO. 11-00498
LEK-RLP; ORDER (1) DENYING PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT AS TO LIABILITY OF DEFENDANTS CITY AND COUNTY OF
HONOLULU AND LOUIS M. KEALOHA ON CLAIMS OF UNNECESSARILY DELAYED
DETENTION; (2) GRANTING IN PART AND DENYING IN PART DEFENDANTS
CITY AND COUNTY OF HONOLULU AND LOUIS M. KEALOHA'S MOTION
FOR JUDGMENT ON THE PLEADINGS; AND (3) GRANTING DEFENDANT LOUIS
KEALOHA'S MOTION FOR PARTIAL SUMMARY JUDGMENT