IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| RUSTIN I. SMITH, | ) | CIVIL NO. 11-00498 LEK-RLP |
| Plaintiff, | ) | |
| vs. | ) | |
| CITY AND COUNTY OF HONOLULU, | ) | |
| Defendant. | ) | |

**ORDER DENYING PLAINTIFF'S MOTION FOR JUDGMENT AS
A MATTER OF LAW OR, IN THE ALTERNATIVE, MOTION
FOR A NEW TRIAL AND/OR AN EVIDENTIARY HEARING**

Before the Court is Plaintiff Rustin I. Smith's ("Plaintiff") Motion for Judgment as a Matter of Law or, in the Alternative, Motion for a New Trial and/or an Evidentiary Hearing ("Motion for New Trial"), filed on August 29, 2014. [Dkt. no. 226.] Defendant City and County of Honolulu ("the City") filed its memorandum in opposition on September 19, 2014, and Plaintiff filed his reply on October 3, 2014. [Dkt. nos. 237, 239.] The Court finds this matter suitable for disposition without a hearing pursuant to Rule LR7.2(e) of the Local Rules of Practice of the United States District Court for the District of Hawai`i ("Local Rules"). After careful consideration of the motion, supporting and opposing memoranda, and the relevant legal authority, Plaintiff's Motion for New Trial is HEREBY DENIED for the reasons set forth below.

**BACKGROUND**

On April 16, 2012, Plaintiff filed his First Amended Complaint for Damages, Declaratory and Injunctive Relief ("Complaint"), alleging nine causes of action against the Chief of the Honolulu Police Department ("HPD"), Louis M. Kealoha ("Kealoha"), the State of Hawai`i ("the State"), and the City. [Dkt. no. 58.] The Complaint focuses on the April 12, 2011 search of Plaintiff's house ("the Search") and, ensuing forty-six hour detention of Plaintiff ("the Detention"), from April 12, 2011 to April 14, 2011. At the time of jury selection and opening statements, on Tuesday, July 22, 2014, the sole remaining claims were against the City, pursuant to 28 U.S.C. § 1983 that HPD officers failed to knock and announce during the Search, and that the Detention was unreasonable, both in violation of Plaintiff's Fourth Amendment rights.

On Wednesday, July 23, 2014 and Thursday, July 24, 2014, Plaintiff put on his case, which consisted of three HPD officers (Major Richard Robinson, Corporal Jon Thomas, and Corporal William Lu), Plaintiff, and his wife, Yuko Smith. [Minutes, filed 7/23/14 (dkt. no. 186); Minutes, filed 7/24/14 (dkt. no. 187) ("7/24/14 Minutes").] When Plaintiff rested, the City made an oral motion for judgment as a matter of law,

pursuant to Fed. R. Civ. P. 50(a) ("Oral Rule 50(a) Motion").[1]
[7/24/14 Minutes.]

On Thursday, July 24, 2014 and Friday, July 25, 2014, the City put on its case, which consisted of four HPD officers (Sergeant Paul Nobriga and officers Shane Wright, Kyle Echiberi, and Blake Davidson), HPD criminologist Jeanette Ardiente, and Deputy Director of the Law Enforcement Division with the State of Hawai`i, Department of Public Safety, Keith Kamita. [7/24/14 Minutes; Minutes, filed 7/25/14 (dkt. no. 188).] On Wednesday, July 30, 2014, the City rested and renewed its Oral Rule 50(a) Motion, counsel made their closing arguments, and the jury began deliberations. [Minutes, filed 7/30/14 (dkt. no. 196).]

The jury continued its deliberations on Thursday, July 31, 2014, and Friday, August 1, 2014. [Minutes, filed 7/31/14 (dkt. no. 205); Minutes, filed 8/1/14 (dkt. no. 212).] On Monday, August 4, 2014, the courtroom manager received an emergency call from the jury, "indicating that one of the jurors, the jury foreperson [Juror Number 4], physically threatened another juror and yelled at a second juror." [Mem. in Supp. of Motion for New Trial, Exh. 3 (Trans. of 8/4/14 Status Conference

---

[1] The City filed its written Rule 50(a) Motion for Judgment as a Matter of Law on July 27, 2014 ("Rule 50(a) Motion"). [Dkt. no. 190.] Plaintiff did not file his own Rule 50(a) motion, and instead made a request for a directed verdict in his memorandum of opposition. [Dkt. no. 197 at 10.]

("8/4/14 Status Conf. Trans.")) at 2.]  In the presence of the parties, the Court proposed to question the jurors individually in open court, with questions it provided counsel, and to give counsel an opportunity to question the jurors as well.  [Id. at 3.]  Counsel agreed to the process, and the Court and Plaintiff's counsel questioned the jurors.  [Id. at 4-22.]  The City's counsel declined to question the jurors.  Since three of the six jurors said they could not continue deliberating with the foreperson – including one who stated she could, but only with security in the room – and one juror was equivocal, the Court excused, without objection, Juror Number 4.  [Id. at 22-24.]

The jury, minus Juror Number 4, continued its deliberations and, the following day, Tuesday, August 5, 2014, returned a verdict, by special verdict form, finding that the City had not violated Plaintiff's constitutional rights. [Minutes, filed 8/4/14 (dkt. no. 213); Minutes, filed 8/5/14 (dkt. no. 216); Special Verdict Form #1, filed 8/5/14 (dkt. no. 217)].  The Clerk of Court entered judgment on August 6, 2014 and, on August 26, 2014, the Court issued its order granting in part and denying in part the Oral Rule 50(a) Motion and the Rule 50(a) Motion ("Rule 50(a) Order").  [Dkt. nos. 219 (judgment), 224 (Rule 50(a) Order).]  On August 29, 2014, Plaintiff filed his Motion for New Trial.

**STANDARD**

Plaintiff brings his motion under Federal Rules of Civil Procedure 50(b), 59(a), 59(e),[2] and 60. [Motion for New Trial at 2.] As an initial matter, this Court cannot consider the motion for judgment as a matter of law under Rule 50(b) because Plaintiff failed to move the Court under Rule 50(a) before the jury received the case. See Fed. R. Civ. P. 50(b) ("No later than 28 days after the entry of judgment . . . the movant may file a **renewed** motion for judgment as a matter of law[.]" (emphasis added)); Tortu v. Las Vegas Metro. Police Dep't, 556 F.3d 1075, 1082 (9th Cir. 2009) (discussing Fed. R. Civ. P. 50 advisory committee's note on 1991 amendments) ("The Rule itself, as well as these amendments, explicitly require a previous motion to be made before submission to the jury."). The Ninth Circuit has held that "we strictly construe the procedural requirement of filing a Rule 50(a) motion before filing a Rule 50(b) motion." Tortu, 556 F.3d at 1082 (citations omitted). Due to this clear requirement of strict construction, the Court cannot construe Plaintiff's request in his memorandum in opposition to the City's Rule 50(a) Motion as a motion under Rule 50(a). Since Plaintiff did not move the Court under Rule 50(a)

---

[2] Rule 59(e) provides that a Rule 59(a) motion must be filed within twenty-eight days of judgment. It is undisputed that the Motion for New Trial is timely as to Rule 59.

5

prior to submission of the case to the jury, it may only consider Plaintiff's motion as a motion for a new trial under Rules 59 and 60.

> Rule 59(a)(1) provides that:
>
> The court may, on motion, grant a new trial on all or some of the issues – and to any party – as follows:
>
>> (A) after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court;
>
>> . . . .

One recognized reason to grant a new trial is for insufficient evidence. "The trial court may grant a new trial only if the jury's verdict was against the clear weight of the evidence." Tortu, 556 F.3d at 1083 (citation and internal quotation marks omitted). While the trial court does have discretion to order a new trial, it "cannot substitute its evaluations for those of the jurors." Id. at 1084 (citation and internal quotation marks omitted) (reversing the district court's grant of a new trial because "the district court took its own view of the medical evidence in place of the jury's – an impermissible practice").

Plaintiff also moves the Court under Rule 60(b), which provides:

> On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons:

>                 . . .
>
>                 (3) fraud (whether previously called intrinsic or
>
>                 extrinsic), misrepresentation, or misconduct by an
>
>                 opposing party;
>
>                 . . . .

This Court has explained that:

> A new trial is properly granted where a party can:
>
>     (1) prove by clear and convincing evidence
>     that the verdict was obtained through fraud,
>     misrepresentation, or other misconduct [and]
>
>     (2) establish that the conduct complained of
>     prevented the losing party from fully and
>     fairly presenting his case or defense.

Coles v. Eagle, Civil No. 09-00167 LEK-BMK, 2011 WL 2610199, at *5 (D. Hawai`i July 1, 2011) (some citations omitted) (quoting Wharf v. Burlington N. R.R. Co., 60 F.3d 631, 637 (9th Cir. 1995) (alteration in Wharf)). "'[T]he flavor of the misconduct must sufficiently permeate an entire proceeding to provide conviction that the jury was influenced by passion and prejudice in reaching its verdict.'" Id. (quoting Doe ex rel. Rudy-Glanzer v. Glanzer, 232 F.3d 1258, 1270 (9th Cir. 2000)).

## **DISCUSSION**

Plaintiff makes, in essence, two arguments as to why he is entitled to a new trial: (1) the jury's verdict, that Plaintiff's detention was reasonable, was against the clear weight of the evidence; and (2) misconduct by the City's

7

witnesses and counsel inflamed the passions of the jury against Plaintiff as a "bad guy," and prevented Plaintiff from fully presenting his case.[3]  The Court considers each of these arguments in turn.

I. **Weight of the Evidence**

Plaintiff argues that the clear weight of the evidence shows that: the City maintains, and trains its officers on, an unconstitutional policy of detaining suspects for forty-eight hours for the express purpose of building a case against them ("the 48-Hour Rule"); and, in this case, the City detained Plaintiff due to ill will, for delay's sake, and to investigate additional crimes with which to charge Plaintiff.  [Mem. in Supp. of Motion for New Trial at 14-20.]  While the Court agrees that

---

[3] Plaintiff also argues that he is entitled to a new trial because the Court failed to instruct the jury on the standard for a wrongful denial of a bail claim; thus he was precluded from presenting the bail issue to the jury.  [Mem. in Supp. of the Motion for New Trial at 32.]  The Court rejected Plaintiff's proposed instruction regarding the right to bail because there is some doubt as to whether the "unnecessary delay" right to bail applies to felonies, see Rule 50(a) Order at 8 & n.4, and as to whether it may be brought under § 1983, see Oyama v. Univ. of Hawaii, Civ. No. 12-00137 HG-BMK, 2013 WL 1767710, at *13 (D. Hawai`i Apr. 23, 2013) ("A claim for violation of state law is not cognizable under § 1983.").  Further, if the claim was actionable, Plaintiff would only have been entitled to an instruction on the bail claim once the jury found that HPD unreasonably delayed in charging him.  Since the jury found that Plaintiff was not unreasonably detained without a charge, it follows that the delay of bail could not have been unreasonable.  Therefore, the Court DENIES the Motion for New Trial regarding the denial of bail claim.

8

Plaintiff did offer evidence on these issues, there is ample evidence in the record that supports the jury's verdict.

In the Rule 50(a) Order, the Court described the burdens and standard for proving that a detention is unreasonable:

> "[A] jurisdiction that provides judicial determination of probable cause [("JDPC")] within 48 hours of arrest will, as a general matter, comply with the promptness requirement of Gerstein [v. Pugh, 420 U.S. 103 (1975)]." [Cnty. of Riverside v.] McLaughlin, 500 U.S. [44,] 56 [(1991)]. A hearing that occurs within forty-eight hours, however, "may nonetheless violate Gerstein if the arrested individual can prove that his or her probable cause determination was delayed unreasonably." Id. Under Hawai`i law, "[a]s soon as practicable . . . [but] not later than 48 hours after the warrantless arrest of a person held in custody, a district judge shall determine whether there was probable cause for arrest." Haw. R. Pen. P. Rule 5(a)(2).

2013 WL 2420894, at *7 (alterations in Summary Judgment Order).[4]

> Officers may engage in administrative steps incident to the arrest. Id. at *8. "The Ninth Circuit has held 'that this very phrase suggests a

---

[4] In the Rule 50(a) Order, the Court referred to its order, [dkt. no. 111,] issued May 31, 2013, (1) Denying Plaintiff's Motion for Summary Judgment as to Liability of Defendants City and County of Honolulu and Louis M. Kealoha on Claims of Unnecessarily Delayed Detention; (2) Granting in Part and Denying in Part Defendants City and County of Honolulu and Louis M. Kealoha's Motion for Judgment on the Pleadings; and (3) Granting Defendant Louis Kealoha's Motion for Partial Summary Judgment as the "Summary Judgment Order." As referred to in the text, the Summary Judgment Order is also available at 2013 WL 2420894.

somewhat flexible approach to what qualifies as an administrative step. . . . We believe that the Court employed the phrase 'incident to' in Gerstein because it recognized that police departments need some flexibility in prescribing their methods of processing different suspects." Id. (quoting Kanekoa v. City & Cnty. of Honolulu, 879 F.2d 607, 610 (9th Cir. 1989)). Administrative steps include "completing paperwork, searching the suspect, inventorying property, fingerprinting, photographing, checking for prior record, laboratory testing, interrogating the suspect, verifying alibis, ascertaining similarities to other related crimes, and conducting line-ups." Id. (citation omitted).

>On the other hand,
>
>>[e]xamples of unreasonable delay are delays for the purpose of gathering additional evidence to justify the arrest, a delay motivated by ill will against the arrested individual, or delay for delay's sake. In evaluating whether the delay in a particular case is unreasonable, however, courts must allow a substantial degree of flexibility. Courts cannot ignore the often unavoidable delays in transporting arrested persons from one facility to another, handling late-night bookings where no magistrate is readily available, obtaining the presence of an arresting officer who may be busy processing other suspects or securing the premises of an arrest, and other practical realities.
>
>McLaughlin, 500 U.S. at 56-57. Further, "it is improper to delay arraignment in order to investigate the suspect's participation in 'additional crimes' (i.e., crimes that were not the basis for arrest)." Anderson v. Calderon, 232 F.3d 1053, 1070 (9th Cir. 2000) (citations omitted), *overruled on other grounds by* Osband v. Woodford, 290 F.3d 1036 (9th Cir. 2002).

[Rule 50(a) Order at 5-7 (some alterations in Rule 50(a) Order).]

Plaintiff does not dispute that HPD officers had the right to detain Plaintiff to take administrative steps, specifically, to complete paperwork, test substances, and interview Plaintiff.  What he argues in his memoranda, and he argued at hearings and at trial, is that HPD may not detain a suspect to investigate additional crimes beyond the crime for which he was arrested and, in Plaintiff's case, that is why HPD detained Plaintiff for forty-six hours.

Plaintiff presents evidence that HPD maintains an unconstitutional policy regarding detention, which directs its officers to detain suspects while they investigate additional crimes.  [Mem. in Supp. of Motion for New Trial at 14-15 (quoting Joint Exhibit 201 ("the 48-Hour Memorandum") ("Once the court signs the JDPC [Judicial Determination of Probable Cause], the police may continue to hold a suspect for up to 48 hours for purposes of developing additional evidence against him.")).] Plaintiff argues that the 48-Hour Memorandum conflicts, as a matter of law, with the Court's jury instructions, which are a correct application of the law.  The specific jury instruction at issue is:

> Officers may not hold an arrestee for the purpose of investigating crimes unrelated to the events, circumstances and charge for which the individual was arrested.
>
> "Additional crimes" mean crimes that were not the basis for arrest.

11

[Jury Instructions, filed 7/30/14 (dkt. no. 195), No. 20 at 27-28.] While there may be some problematic language in the 48-Hour Memorandum, the Court cannot say that it is unconstitutional as a matter of law. The City argues, and the Court agrees, that "developing additional evidence" need not mean "additional evidence for additional charges" against a suspect. Thus, it would have been reasonable for the jury to find the 48-Hour Memorandum constitutional based on the testimony of Major Robinson and other witnesses.

Further, Plaintiff points to no evidence to show that HPD officers were improperly trained on that policy or that the policy caused any delay in Plaintiff's detention. [Mem. in Supp. of Motion for New Trial at 14-16.] In fact, while Plaintiff suggests that Corporal Lu was mistaken in believing officers needed to gather evidence of guilt beyond a reasonable doubt to present to prosecutors, [id. at 18 (citing Motion for New Trial, Decl. of Eric A. Seitz ("Seitz Decl."), Exh. 1 (Excerpt of Trans. of 7/23/14 AM Tr. Proceedings ("7/23/14 AM Tr. Trans.")) at 11, 12,] he testified that "once a person is arrested on a felony charge, there is a time clock that starts," and "[t]hey're to be charged as soon as possible" [7/23/14 AM Tr. Trans. at 11, 12]. This is entirely consistent with the law, runs counter to any alleged unconstitutional policy or practice, and is consistent

with this Court's findings in the Rule 50(a) Order.[5]  [Rule 50(a) Order, at 7 n.3 ("Defendant has presented testimony showing that the policy is proper and used in a permissible way.").]

Moreover, while Plaintiff argues that the evidence shows that HPD detained Plaintiff while it investigated additional crimes, much of the evidence regarding HPD's drug analysis and paperwork could reasonably be interpreted as permissible administrative steps related to charging Plaintiff pursuant to his arrest.  See Kanekoa, 879 F.2d at 610 (discussing flexible approach to administrative steps).  The Court does not find that the HPD officers' descriptions of the suspicious-looking address on the package sent to Plaintiff's house, or of Plaintiff's home as a drug distribution center or warehouse, show ill will toward Plaintiff, let alone provide evidence to overturn the jury's verdict.

Plaintiff does not dispute the evidence that HPD had probable cause and a warrant to search Plaintiff's house, that officers found "bath salts" there, which Plaintiff sold out of his stores, and that the HPD officers and Ms. Ardiente spent time

---

[5] The Court also notes that since the jury found that Plaintiff was not unreasonably detained, it did not reach the issue of whether the policy was unconstitutional or whether it caused the lengthy detention.  Since this Court is not considering a directed verdict for Plaintiffs, see *supra* Standard Section, these arguments have no bearing on the outcome of the Motion for New Trial.

13

analyzing those drugs and engaging in other administrative steps. Plaintiff's sole argument is that HPD was actually investigating additional crimes while it detained Plaintiff, rather than investigating the drug crime for which he was arrested. The line between those two actions is a blurry one and, unquestionably, in the discretion of the fact-finder. While Plaintiff, or even this Court, might disagree with the jury as to which side of that line HPD was on while it detained Plaintiff, the Court concludes that there was ample evidence that could go either way as to the issue, and thus it was properly left to the jury. See Tortu, 556 F.3d at 1084. Since the weight of the evidence was not against the verdict, the Court DENIES the Motion for New Trial as to this argument.

## II. The City's and Jury's Purported Misconduct

Plaintiff also argues that the City's witnesses' and counsel's conduct swayed the jury, and thus the jury found Plaintiff's detention reasonable, not based on the law, but rather because Plaintiff was a "bad man." [Mem. in Supp. of Motion for New Trial at 20-32.] The evidence does not support this theory, let alone prove by clear and convincing evidence that the verdict was obtained by misconduct, or that Plaintiff was prevented from fully presenting his case. See Wharf, 60 F.3d at 637. Plaintiff argues that, contrary to the Court's pretrial order limiting the City's presentation of "bad acts" evidence,

14

[Court's Inclinations Re Motions in Limine ("Inclinations"), filed 7/8/14 (dkt. no. 167); Minutes ("In Limine Order"), filed 7/9/14 (dkt. no. 172) at 2 (adopting Inclinations),] the City violated the In Limine Order and portrayed Plaintiff as a "bad guy." [Mem. in Supp. of Motion for New Trial at 21-23.]

Plaintiff specifically highlights: (1) the HPD officers' testimony on the size and complexity of the investigation, and Plaintiff's house as a storage and distribution center for drugs; and (2) two statements in counsel's closing, that HPD uncovered a "tub of additional substances" during the search of Plaintiff's home, and that Plaintiff's arrest and detention affected his business practices. As discussed above, there was nothing improper about the HPD witnesses' characterization of their investigation, and their description of Plaintiff's home. And while the Court agrees with Plaintiff that the allusion to the "tub of additional substances" in counsel's closing argument may have been in conflict with the In Limine Order, this single mention was harmless and unlikely to have swayed the jury. See Glanzer, 232 F.3d at 1270. That is, it is not clear and convincing evidence of misconduct. Last, counsel's statements regarding Plaintiff's testimony about how he researches vendors for his business and what he sells in his store today is nothing more than argument, which directly addressed Plaintiff's closing argument and Plaintiff's

15

credibility concerning what he testified to on the stand. Thus, Plaintiff does not present any evidence, let alone clear and convincing evidence, that the City engaged in misconduct or obtained the verdict through its own misconduct.

What remains is Plaintiff's argument that the circumstantial evidence shows that the jurors, with the exception of Juror Number 4, engaged in misconduct. His theory is that Juror Number 4 grew violent because the other jurors planned to issue a verdict based on their belief that Plaintiff was a "bad guy," and not based on application of law. In essence, Juror Number 4 was a safeguard on the deliberation process and when he was dismissed, the other jurors engaged in misconduct.

Plaintiff does not argue that the Court erred in excusing Juror Number 4, nor deny that his counsel stipulated to Juror Number 4's dismissal. [8/4/14 Hrg. Trans. at 23-24 ("THE COURT: Okay. So I want to propose to counsel that the parties stipulate that the court will excuse the foreperson from the jury. . . . Any objections or suggestions to the court's proposal? MR. SEITZ: That's fine.").] Thus, the cases that the parties discuss, such as United States v. Symington, 195 F.3d 1080 (9th Cir. 1999) – which address the standard for determining whether a juror was wrongfully dismissed – do not directly apply. Similarly, the question for this Court is not whether there is a "reasonable possibility that the impetus for [Juror Number 4's]

16

dismissal stems from the juror's views on the merits of the case," [Mem. in Supp. of New Trial Motion at 32 (alteration added) (quoting Symington, 195 F.3d at 1087),] but rather the much higher clear and convincing evidence standard for misconduct discussed above. See Wharf, 60 F.3d at 637.

The Court FINDS that Plaintiff has not presented clear and convincing evidence of jury misconduct, or shown that he was unable to fully present his case. It is undisputed that Juror Number 4 physically threatened his fellow jurors. Upon questioning, some of the jurors suggested that the conflict may have been related to the deliberations. While it is sensitive to the important issue that Plaintiff raises, the Court gives these juror statements limited weight; it is hard to imagine how the conflict could not have – in some way – grown out of the deliberations. It occurred while deliberating in the courthouse with a court security officer outside the door. In contrast to those juror statements, other jurors stated that they could continue to deliberate with Juror Number 4, in spite of his threats. Further, the jury deliberated for another four hours after the Court dismissed, without objection, Juror Number 4. This is not the juror testimony or immediate verdict that one might expect had Juror Number 4 simply been a holdout.[6] Taken as

---

[6] The circumstantial evidence here is easily distinguished
(continued...)

a whole, the facts of this case do not convince the Court that there was any misconduct or that Plaintiff was not fully able to present his case. Thus, the Court DENIES the Motion for New Trial as to this argument.

## CONCLUSION

On the basis of the foregoing, Plaintiff's Motion for Judgment as a Matter of Law or, in the Alternative, Motion for a New Trial and/or an Evidentiary Hearing, filed August 29, 2014, is HEREBY DENIED.

IT IS SO ORDERED.

DATED AT HONOLULU, HAWAII, October 31, 2014.



/s/ Leslie E. Kobayashi
Leslie E. Kobayashi
United States District Judge

**RUSTIN I. SMITH VS. CITY AND COUNTY OF HONOLULU; CIVIL 11-00498 LEK-RLP; ORDER DENYING PLAINTIFF'S MOTION FOR JUDGMENT AS A MATTER OF LAW OR, IN THE ALTERNATIVE, MOTION FOR A NEW TRIAL AND/OR AN EVIDENTIARY HEARING**

---

[6](...continued)
from, for example, Symington, where jurors expressed general frustration with the dismissed juror, and stated she was keeping the jury from a verdict. 195 F.3d at 1088. The Court regrets that Juror Number 4 may have felt that his opinions were not completely respected by everyone on the jury. See Seitz Decl. at ¶¶ 7-8. However, his statement that he was not surprised by the verdict, that some jurors made up their minds quickly as to the verdict, and that the other jurors did not fully respect him, is not clear and convincing evidence of misconduct.